NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0440n.06

No. 23-5817

**FILED**
Nov 01, 2024
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DANA EUGENE JONES,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: CLAY, WHITE, and DAVIS, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Defendant-Appellant Dana Jones appeals his sentence, arguing that it is substantively and procedurally unreasonable. Because the district court properly determined Jones' sentence and carefully weighed the relevant sentencing factors, we AFFIRM.

## I. Facts

In February 2021, the Government indicted Dana Jones, alleging that he engaged in various child-pornography offenses and unlawfully distributed controlled substances to persons under twenty-one years old. Pursuant to a plea agreement, Jones pled guilty to two counts of producing child pornography, 18 U.S.C. § 2251(a), and the Government dropped the other counts. Jones also agreed to cooperate fully with the Government's investigation into several other individuals. As part of the agreement, Jones reserved the right to appeal his sentence.

At the sentencing hearing, the district court found that Jones' recommended sentence under the Sentencing Guidelines was sixty years. Jones did not make any objections to the Guidelines calculations. The Government requested a downward departure to forty-five years based on Jones'

cooperation. Jones requested a sentence of fifteen to twenty years, arguing that he had accepted responsibility, that he is sixty years old, and that he has no criminal history. Jones also provided a brief allocution and submitted positive character letters from his friends and family. The district court granted the Government's request for a downward departure to a forty-five-year sentence. It then further reduced Jones' sentence to forty years because Jones had pled guilty and "accept[ed] the consequences of his choices." R. 114, PID 407. But the district court declined to reduce the sentence any further, citing "the indisputable gravity of the conduct," the "risk" Jones posed, and "the clarity of the need for punishment." *Id.* at 406. At the end of sentencing, the court asked Jones' counsel if he had "any objection" and asked "[d]oes either side request any additional discussion?" *Id.* at 412-13. Jones raised no objections.

Jones now appeals, arguing that his sentence is procedurally and substantively unreasonable.

## II. Analysis

### A. Standard of Review

A criminal sentence must be both procedurally and substantively reasonable. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). We review claims of both procedural and substantive unreasonableness for an abuse of discretion. *Id.* (citing *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)). We review a district court's factual findings for clear error and its legal conclusions de novo. *Id.* But if a defendant fails to object to the procedural reasonableness of a sentence after the district court explicitly asks for objections, plain-error review applies. *United States v. Coleman*, 835 F.3d 606, 615 (6th Cir. 2016); *see also United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010). Jones's denial at the close of sentencing that he had any objections means we review his procedural reasonableness claim for plain error.

To meet his burden under the plain-error standard, Jones must show that a procedural error: (1) occurred, (2) was clear or obvious, (3) affected his substantial rights, and (4) affected the "fairness, integrity, or public reputation of the judicial proceedings." *Coleman*, 835 F.3d at 615 (citing *United States v. Vonner* 516 F.3d 382, 386 (6th Cir. 2008) (en banc)). "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [he] would have received a more favorable sentence." *United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010).

## B. Procedural Unreasonableness

A sentence is procedurally unreasonable if a district court fails to "properly calculate the guidelines range." *Rayyan*, 885 F.3d at 440. Jones argues that the district court incorrectly applied the Sentencing Guidelines' rules for convictions on multiple counts.

Under the Sentencing Guidelines, when a defendant is convicted on multiple counts, the district court considers the defendant's total offense level and criminal history to determine a recommended guideline range. U.S.S.G. § 5G1.2. That recommended range is called the defendant's "total punishment." *Id.* cmt. n.1. Here, based on Jones' offense level and criminal history, the district court initially determined that Jones' total punishment is life imprisonment. But the statutory maximum for each of the counts to which Jones pleaded guilty is thirty years. In this situation—where a defendant's "total punishment" exceeds the "highest statutory maximum" on the convicted counts—the Guidelines instruct that the sentences on the convicted counts "shall run consecutively . . . to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d). In other words, the district court should re-calculate the defendant's guideline range by "stacking" the statutory maximums for the convicted counts until

the sum reaches the total punishment. *United States v. Graham*, 327 F.3d 460, 461, 464–66 (6th Cir. 2003).

This rule has unique implications when a defendant's "total punishment" is a life sentence. "By definition, life imprisonment lacks a fixed term." *United States v. Gordy*, No. 22-5112, 2023 WL 2366641, at *3 (6th Cir. Mar. 6, 2023) (quoting *United States v. Kirby*, 938 F.3d 1254, 1258 (11th Cir. 2019)). Thus, no amount of stacking of finite statutory maximums will "produce a combined sentence equal to the total punishment" of a life sentence. U.S.S.G. § 5G1.2(d). So the correct guideline range in such a case is the sum of the statutory maximums on all the defendant's convicted counts. *See, e.g.*, *United States v. Aguilar-Andres*, 780 Fed. App'x 231, 233 (6th Cir. 2019). That sum serves as the recommended guideline range "in lieu of" the originally calculated life sentence. *Gordy*, 2023 WL 2366641, at *4. For instance, in *Aguilar-Andres*, the defendant's "total punishment" was a life sentence, but he was convicted of three counts with finite statutory maximums of thirty years, thirty years, and twenty years. 780 Fed. App'x at 232. We held that the correct guideline range was eighty years—the result of the district court "stack[ing] the three maximums." *Id.* at 234.

Of course, that stacked sum is merely the defendant's *guideline* range—i.e., the sentence recommended under the Sentencing Guidelines. It is thus a "meaningful benchmark" and starting point for sentencing, but the district court has discretion to depart from it. *Peugh v. United States*, 569 U.S. 530, 541 (2013). Once the "benchmark is established," the district court may "consider any party's sentencing request or exercise its discretion to impose sentences consecutively or concurrently" in deciding the actual sentence imposed. *Gordy*, 2023 WL 2366641, at *4.

Here, the district court followed those procedures. The district court found that Jones' total punishment—a life sentence—exceeded the statutory maximums on his counts of conviction.

4

Thus, the district court "stack[ed] the maximum result for each count" to calculate a non-life "guideline sentence." R. 114, PID 361–64. Stacking the thirty-year maximums on Jones' two child pornography counts, the district court concluded that Jones' guideline range was sixty years. *Id.* From there, the district court acknowledged that the guideline range is "not binding," *id.* at 400, and that it could choose to "run time imposed between the counts concurrently," "or consecutively," *id.* at 361. After giving Jones "some benefit" "for the decision to plead guilty and accept the consequences of his choices," and for cooperating with the Government, the district court imposed a sentence of forty years. *Id.* at 407.

Jones raises three objections to this process. First, he asserts the district court mistakenly applied Section 5G1.1(a) of the Sentencing Guidelines, which involves sentencing for a single count of conviction, and which thus says nothing about stacking sentences. True, at the sentencing hearing, the district court stated that "5G1.1(a)" requires "stack[ing] the maximum result for each count." R. 114, PID 364. But it appears the district court simply misspoke. Although Section 5G1.1 applies only to sentencing on a single count of conviction, the district court thoroughly applied the correct part of the Sentencing Guidelines, Section 5G1.2, which the district court referenced in its written Statement of Reasons for imposing its sentence. At the sentencing hearing, neither party expressed any confusion about the district court's misstatement. Thus, there is no reversible error here. *See, e.g.*, *United States v. Malone*, 827 Fed. App'x. 556, 561 (6th Cir. 2020) (holding that no reversible error occurred where "the district court misspoke" at a sentencing hearing because it was clear that the district court "considered the parties' arguments and had a reasoned basis for exercising its own legal decisionmaking authority in determining defendant's sentence") (cleaned up).

5

Jones next argues that the district court mistakenly believed that "consecutive sentencing was required" on the two convicted counts. Appellant's Brief at 14–16. But the district court clearly stated at the sentencing hearing that it had discretion to depart from the Guidelines and impose a concurrent or partially concurrent sentence. And indeed, the district court *did* depart from the Guidelines: Although the guideline range was sixty years, the district court imposed a forty-year sentence, with part of the sentence on the second count running concurrently to the sentence on the first count. Jones seems to confuse "the district court's stacking of statutory maximums to calculate his non-life Guideline range" with its "discretion to impose a defendant's sentence for each count as consecutive to or concurrent with the others." *Gordy*, 2023 WL 2366641 at *2. When the district court calculates a defendant's guideline range in a case like this one, it is required to stack statutory maximums. But once the guideline range is established, the district court has discretion to depart from it. *Id.* at *4. That is what the district court did here.

Third, Jones argues that the district court erred by "making the sentences consecutive without explaining its reasoning." Appellant's Brief at 16. But the district court *did* explain its reasoning. It thoroughly explained why the Guidelines require stacking sentences for purposes of calculating the guideline range, why it departed from the guideline range benchmark, and why it declined to depart further. Jones does not articulate why he believes those explanations are insufficient.

Thus, Jones' sentence is not procedurally unreasonable.

### C. Substantive Unreasonableness

Jones also argues that his sentence is substantively unreasonable. A sentence may be substantively unreasonable where the district court "placed too much weight" on certain

sentencing factors "and too little [weight] on others." *Rayyan*, 885 F.3d at 442. Jones makes two arguments on this score.

First, he argues that the district court gave "unreasonable weight" to its conclusion that Jones had not demonstrated remorse. Appellant's Brief at 19–20. At the sentencing hearing, Jones' allocution focused largely on his "family and children," his upbringing, and his father's death. R. 114, PID 392. Jones spent comparatively little time discussing his remorse towards the victims. He said that his crimes were his "own fault," but he also stated that he had "put [him]self around all types of people," and "what you hang around is what you'll become." *Id.* at 391. He stated in conclusion that he was "sorry" "to the Court, prosecutor, families involved, and my family and children." *Id.* at 392. The district court found that Jones had not shown sufficient remorse. In the court's view, Jones demonstrated "a lot of sorrow for himself and . . . pain for his family," but little "sorrow toward the victims." *Id.* at 396. Rather than providing a full apology, Jones' statement had "bordered on . . . an insinuation of blame toward the victims." *Id.* at 396. Jones asserts that the district court gave this conclusion undue weight—that it "discarded all" positive evidence of Jones' character solely because it thought Jones was "victim blaming." Appellant's Brief at 20.

The record, however, shows that the district court fairly weighed all relevant factors in determining Jones' sentence. Indeed, it performed a thorough and nuanced analysis of Jones' character. It considered statements from Jones' victims, letters from Jones' family, the "painful" and "shocking" nature of Jones' crimes, and the purposes punishment would serve. R. 114, PID 393–407. Based on that information, the district court concluded that Jones "is two different people wrapped in one"—that he is both a "parent" who has "done some positive things," and an "exploiter of an innocent child." *Id.* at 394–95, 404. The district court explained that it would not

"ignore" any of the positive character evidence Jones submitted. *Id.* at 394. But it ultimately concluded that Jones was not entitled to his requested sentence reduction because of "the indisputable gravity of the conduct," the "risk" Jones posed, and "the clarity of the need for punishment." *Id.* at 406.

In other words, the district court did not give outsized weight to its observation that Jones seemed to insinuate that blame lay elsewhere. To the contrary, that observation was one small part of an extensive sentencing analysis. Jones may have preferred that the district court give greater weight to his positive character evidence, but that "ultimately boils down to an assertion that the district court should have balanced the [sentencing] factors differently," which "is simply beyond the scope of [this court's] appellate review." *United States v. Frei*, 995 F.3d 561, 567–68 (6th Cir. 2021) (quoting *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008)).

Second, Jones seems to argue that the district court was *wrong* to conclude that Jones lacked remorse. But the question whether a defendant has demonstrated "contrition" is a "credibility assessment[]" that is squarely within a district court's wheelhouse. *United States v. Sadiq*, 579 Fed. App'x. 485, 488–89 (6th Cir. 2014) (quoting *United States v. Carroll*, 893 F.2d 1502, 1511–12 (6th Cir. 1990)). We review such credibility assessments for clear error, *id.*, and we do not disturb them unless they are "clearly contrary to the facts," *United States v. Hadley*, 431 F.3d 484, 514 (6th Cir. 2004). Here, the district court's conclusion that Jones showed insufficient remorse was not clearly contrary to the facts. Jones' allocution focused almost entirely on his family; he mentioned the victims only in the concluding sentence. Thus, the district court did not clearly err in finding that Jones displayed "a lot of sorrow for himself and . . . pain for his family," but did not provide a sufficient "apology to the victims." R. 114, PID at 396. Accepting Jones' argument would require us to "redetermine the credibility of [a] witness[] whose demeanor has

8

been observed by the trial court." *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004).  That we cannot do.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Jones' sentence.